UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────────────

RONALD LOUIS MACGREGOR,

             Plaintiff,

     v.                                   19-CV-650-LJV
                                           DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

────────────────────────────────────

On May 20, 2019, the plaintiff, Ronald Louis MacGregor, brought this action under the Social Security Act.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.  Docket Item 1.  On October 20, 2019, MacGregor moved for judgment on the pleadings, Docket Item 7; on January 17, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on February 11, 2020, MacGregor replied, Docket Item 14.

For the reasons stated below, this Court grants in part and denies in part MacGregor's motion and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first

───────────────

[1]  This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

MacGregor argues that the ALJ erred in two ways. Docket Item 7-1. He first argues that "the ALJ neglect[ed] his duty to develop the record by relying improperly on the five[-]day rule." *Id.* at 1. MacGregor then argues that the ALJ erred in finding that MacGregor's "right knee impairment was nonsevere" at step two. *Id.* This Court agrees that the ALJ erred and therefore remands the matter to the Commissioner.

The claimant bears the burden of proving disability at the first four steps of the sequential evaluation process. Toward that end, under 20 C.F.R. § 416.1435(a), the claimant must "inform [the Commissioner] about or submit any written evidence" of

disability "no later than 5 business days before the date of the scheduled hearing."  *Id.*

If the claimant does *not* comply with this five-day rule, the ALJ "may decline to consider

or obtain the evidence," unless certain circumstances apply.  *Id.* § 416.1435(a)-(b).  As

this Court has previously found, however, if the claimant informs the ALJ about the

evidence within the five-day window, it is error for the ALJ to "refus[e] to obtain and

consider that evidence."  *Drogo v. Comm'r of Soc. Sec.*, No. 6:18-CV-6105, 2019 WL

2569599, at *4 (W.D.N.Y. June 21, 2019) ("[T]he ALJ can decline to '**obtain**' relevant

written evidence only if the claimant does not '**inform**' the Commissioner '**about**' such

evidence at least five business days before the hearing." (emphasis in original)).

Moreover, "[b]ecause a hearing on disability benefits is a non-adversarial

proceeding, the ALJ generally has [a separate] affirmative obligation to develop the

administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria

v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v.

Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that

the Commissioner, before rendering any eligibility determination, "make every

reasonable effort to obtain from the individual's treating physician (or other treating

health care provider) all medical evidence, including diagnostic tests, necessary in order

to properly make such determination").  Thus, "where there are deficiencies in the

record, an ALJ is under an affirmative obligation to develop a claimant's medical history

'even when the claimant is represented by counsel or . . . by a paralegal.'"  *Rosa v.

Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47).  On the other

hand, "where there are no obvious gaps in the administrative record, and where the ALJ

already possesses a 'complete medical history,' the ALJ is under no obligation to seek

additional information in advance of rejecting a benefits claim."  *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48).

The Social Security Administration's own regulations reflect this duty, stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."  20 C.F.R. § 404.1512(d)(1).  The regulations explain that "every reasonable effort" means that "we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination."  *Id.* § 404.1512(d)(1)(i) (emphasis added).

Here, MacGregor's counsel informed the ALJ on April 8, 2018, that medical records from Unity Health System were "presumed to be material in [MacGregor]'s disability case" and his "office [had] requested [those] records and [would] continue to pursue [them] by telephone, fax, and/or mail."  Docket Item 4 at 239.  Counsel further stated that he "presume[d] that this notice satisfies the requirements of [the regulations governing the five-day rule]."  *Id.*

At the hearing on April 26, 2018, the ALJ said, "I know you sent in a five-day letter.  [A]re we still missing medical evidence?"  *Id.* at 53.  MacGregor's counsel responded, "Yes, Your Honor.  Still in the process of obtaining medical evidence from Unity Health."  *Id.*  The ALJ replied, "Unity Health.  Okay.  So we'll leave the record open for that . . . ."  *Id.*

On July 17, 2018, the ALJ issued his decision finding that MacGregor was not

disabled.  *See id.* at 19-33.  At the outset of his decision, the ALJ stated the following:

> The claimant submitted or informed the Administrative Law
> Judge about additional written evidence less than five
> business days before the scheduled hearing.  The
> undersigned Administrative Law Judge declines to admit this
> evidence because the requirements of 20 C.F.R. 404.935(b)
> and 416.1435(b) are not met.  The record was held open for
> two months as the claimant's representative indicated
> additional treatment records from Unity would be
> forthcoming; however, no additional evidence has been
> received from Unity Health as of the date of this Decision.
> As such, the undersigned considers the record closed as the
> claimant's representative had more than ample time to
> submit any such documentation.

*Id.* at 19.

MacGregor argues that the ALJ "neglect[ed] his duty to develop the record by

relying improperly on the five[-]day rule."  Docket Item 7-1 at 1.  More specifically,

MacGregor asserts:

> The five[-]day rule works to ensure an ALJ has both a
> complete record and time prior to a hearing to review the
> evidence.  It also works to avoid undue delays.  The five[-]
> day rule centers on the issues of notice and timeliness.  The
> five[-]day rule does not discharge the ALJ of a separate duty,
> his duty to ensure a complete record and his duty to develop
> the record.  The ALJ in this case mischaracterized the basis
> for the five[-]day rule and harmed [MacGregor] by ignoring
> his duty to develop the record.  The ALJ's decision was not
> based on a complete record and his RFC and decision is not
> supported by substantial evidence, warranting remand.

*Id.* at 16.  For several reasons, this Court agrees.

As an initial matter, it appears that, contrary to the ALJ's contention, MacGregor

complied with the five-day rule as he "inform[ed the Commissioner] about" the Unity

Health records by letter more than two weeks "before the date of the scheduled

5

hearing." *See* 20 C.F.R. § 416.1435(a).  Thus, the ALJ erred in failing to obtain and

consider the records.  *See Drogo*, 2019 WL 2569599, at *4 ("In light of [the] duty [to

develop the record], an ALJ cannot simply choose to disregard evidence that the ALJ

knows about—and about which the claimant has informed the ALJ—before the [five-

day] deadline.").

     Even worse, the ALJ told counsel that he would leave the record open, but gave

no time frame within which he expected to receive the records, and then closed the

record and issued his decision without giving counsel any notice that he would do so.

At a bare minimum, the ALJ should have reached out to MacGregor's counsel to inquire

about the status of the records before issuing his decision.  *See* Docket Item 7-1 at 20

(MacGregor's explaining that the ALJ "made no effort to reach out to the representative

to determine the status of the records").  The failure to do that was error in and of itself.

     Moreover, aside from the five-day rule, the ALJ was on notice of a gap in the

record and made no effort to fill it.  The ALJ found that MacGregor's post-concussion

syndrome—caused when MacGregor fell at work in February 2017 and hit his head on

a concrete pole—was a severe impairment.  Docket Item 4 at 23, 28.  He acknowledged

that MacGregor "reported fatigue and weakness as well as concussion-related

headaches and anxiety" and that MacGregor "reported [that] he attends a concussion

program at Unity Health."  *Id.* at 28.  And the ALJ knew that the missing records were

from the post-concussion program at Unity Health.  Yet the ALJ made no effort to obtain

those records.

     The Commissioner argues that "the Court is under no obligation to remand based

on a mere 'theoretical possibility' [that] there is additional evidence," and cites several

cases in support of that proposition. *See* Docket Item 11-1 at 19. This Court agrees. But the additional evidence here was specifically identified by MacGregor and therefore was more than a "theoretical possibility." Indeed, as noted above, the ALJ knew that the missing records identified by MacGregor's counsel were related to the post-concussion program that MacGregor attended at Unity Health. *See* Docket Item 4 at 19 (ALJ's acknowledging that the missing records were "Unity Health" records); *id.* at 28 (ALJ's noting that MacGregor "attends a concussion program at Unity Health"). So the additional evidence here was both real and relevant. *Cf. Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) (summary order) (declining to remand where it was "not even clear that any records [we]re actually missing").

Nor can this Court say that the ALJ's error was harmless. *Cf. Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining to remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The ALJ concluded that "the objective evidence . . . reflects that [MacGregor] is not as limited as alleged, as [MacGregor]'s symptoms outweigh the objective findings in the evidence." Docket Item 4 at 28. More specifically, the ALJ said that "neurological and psychiatric findings upon examination are grossly normal, including intact cranial nerves, normal strength, gait, sensation, coordination, orientation in all spheres, and reflexes as well as normal cognition." *Id.* The ALJ added that MacGregor "reported [that] his oxycodone is effective at managing his symptoms" and "denie[d] neurologic symptoms including focal weakness upon examinations." *Id.* Then, relying on the opinions of two consulting examiners—John Schwab, D.O. (February 2016), and Christine Ransom, Ph.D. (March 2016)—the ALJ found that "the record supports [the conclusion that MacGregor] is

capable of simple, unskilled work which accommodates his post-concussion syndrome." *Id.* at 29.

But many of the records on which the ALJ relied—including both consultative examinations—*pre-dated* MacGregor's February 2017 concussion and therefore have no bearing on his post-concussion syndrome. What is more, the records that post-dated the concussion appear to support MacGregor's contention that his post-concussion syndrome interferes with his ability to work. *See, e.g.*, *id.* at 572 (August 2017 treatment note stating that MacGregor's "chief complaint [is] of headaches"; that he "is on concussion protocol from Unity Hospital"; that he "[a]dmits the headaches last anywhere from 20 minutes to 2 hours, come on randomly, [and] can wake him up from sleep"; that he "[s]tates the pain is so bad sometimes and fluctuates in severity"; and that he "also admits nausea and dizziness from these headaches"). And those records also suggest that the oxycodone that the ALJ found was "effective at managing [MacGregor's concussion-related] symptoms," *see id.* at 28, was prescribed for knee pain rather than headaches. *See id.* at 573 (noting that MacGregor's knee pain is "stable with pain medication"); *id.* at 579 (explaining that "[t]he oxycodone use was intended to treat residual pain from a new injury from a motorcycle crash in Kentucky"); *see also id.* at 66 (MacGregor's testifying that he has "probably tried six to eight different medications [for his headaches] and none of them really made a dent").

For all those reasons, this Court finds that the ALJ erred in closing the record without obtaining the Unity Health records and remands for development of the record.[2]

---

[2] The Court "will not reach the remaining issues raised by [MacGregor] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*,

## <u>CONCLUSION</u>

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and MacGregor's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:        September 30, 2020
              Buffalo, New York


                                             _/s/ Lawrence J. Vilardo_
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE

---

No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").